**Evelyn C. SCHWEIZER,**
**Plaintiff–Appellant,**

v.

**CITY OF MAPLEWOOD,**
**Defendant–Respondent.**

**No. 56788.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 13, 1990.

Joseph J. Dolgin, Clayton, for plaintiff-appellant.

Evans & Dixon, John A. Michener and Jeffrey K. Suess, St. Louis, for defendant-respondent.

CRANDALL, Judge.

Plaintiff, Evelyn Schweizer, appeals from the trial court's grant of summary judgment in favor of defendant, City of Maplewood. We reverse and remand.

The record in the instant action reveals that plaintiff was walking on a sidewalk in the City of Maplewood, Missouri (City). She stepped onto a manhole cover sewer lid and concrete slab that surrounded the manhole. The lid collapsed, causing her to fall into the hole and to sustain injuries. She brought an action against both Metropolitan St. Louis Sewer District (MSD) and City. She later dismissed her action without prejudice against MSD. The trial court subsequently granted City's motion for summary judgment.

Preliminarily, we note that MSD was established pursuant to Article VI, Section 30(a)(4) of the Missouri Constitution. Article 3, Section 3.010 of the MSD Plan provides in pertinent part as follows:

[T]he existing sanitary and storm water sewer systems and facilities of any and

all municipalities, sewer districts, and other public agencies situated within the boundaries of the District, together with all contracts, rights, privileges, interests, easements, books, maps, plans, papers, and records ... shall be transferred and dedicated to the use of and be in the possession and under the jurisdiction, control, and supervision of the District under this Plan created, and the District is empowered to take title thereto for its use and possession. The District hereunder created shall thereafter have complete title, jurisdiction, control, possession, and supervision of such existing sanitary and storm water sewer systems and of all facilities of such municipalities, sewer districts, and other public agencies for the collection and the disposal of sanitary sewage and storm water ... the District shall undertake the maintenance and operation of said systems and facilities, and on and after such date the District shall exclusively operate, maintain, and control said systems and facilities.

In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the party against whom the motion for summary judgment was filed and against whom judgment was rendered, and must accord to that party the benefit of every doubt. *Monsanto Co. v. Logisticon, Inc.*, 763 S.W.2d 371, 372 (Mo. App.1989). If a genuine issue of material fact exists, summary judgment cannot be granted. Rule 74.04(c).

██ The dispositive issue on appeal is whether City owes a duty to plaintiff in tort for that portion of the sidewalk which concurrently constitutes part of the sewer system of MSD.[1]

██ A sidewalk is that part of the street set aside for use by pedestrians,

*Blackburn v. Swift*, 457 S.W.2d 805, 807 (Mo.1970), "a walk for foot passengers...." *Williams v. City of Kansas City*, 782 S.W.2d 64, 66 (Mo.1990) (quoting Webster's Third New International Dictionary 2113 (1976)). A city has a non-delegable duty to maintain its sidewalks in a reasonably safe condition for use by the public or to warn of dangers and defects in those sidewalks. *Smith v. City of St. Louis*, 671 S.W.2d 446, 447 (Mo.App.1984). A corollary to this duty is the duty to "exercise ordinary care to discover and remedy conditions which render such places not reasonably safe for such use." *Lithegner v. City of St. Louis*, 125 S.W.2d 925, 929 (Mo.App.1939). As a further duty, the city must cause any street or sidewalk which falls out of repair to be repaired within a reasonable time. *Id.* Before the city can be held liable for failure to repair, a city must have either actual notice or constructive notice of the existing dangerous condition. *Id.*

Applying these principles to the facts in this case, we note that the sidewalk in question was public property. City simply transferred complete custodianship of a portion of that sidewalk to MSD for use in its sewer system. As a result of this transfer, MSD enjoyed the exclusive right to operate, maintain, and control the sewer area.

MSD's control over the property notwithstanding, City was not relieved of its duty to the public regarding defects in its sidewalk. We acknowledge that the maintenance of the sewer was the responsibility of MSD.[2] Although City did not have the duty to repair and maintain that portion of its sidewalk, nothing in the transfer of custodianship of that section of the sidewalk to MSD operated to eliminate City's duty to warn of a dangerous condition in

1. For purposes of reviewing whether summary judgment was proper in this case, we assume that the manhole cover and concrete slab did, as a physical fact, constitute part of the sidewalk, a fact which might be contested in a trial on the merits.

2. In general MSD has potential liability to a person injured on its property; but we express no opinion as to MSD's liability in this particular case. In order to maintain a cause of action against MSD, however, a plaintiff must overcome the sovereign immunity hurdle. *See* Section 537.600.1(2), RSMo (Cum.Supp.1989); *see also Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831 (Mo. banc 1985); *Hummel v. Metropolitan St. Louis Sewer District*, 782 S.W.2d 451 (E.D.Mo.App.1990).

that section of the sidewalk. City's duty to protect the public from a dangerous condition in its sidewalk continued. Concomitantly, a pedestrian should not have to speculate as to which part of the sidewalk is under the control of City and which part is under the control of MSD when seeking legal redress for an injury suffered on that sidewalk.

In the present case, the duty to warn of a dangerous condition in its sidewalk remained with City. Plaintiff's petition stated, "That the defendant [City] failed to use reasonable care to warn plaintiff of said dangerous condition." Construing plaintiff's petition liberally in her favor, plaintiff adequately pleaded a viable action against City based upon City's failure to warn of a dangerous condition in its sidewalk. The trial court improperly granted summary judgment to City on the basis of MSD's exclusive control of the manhole and concrete slab surrounding the manhole.

The judgment is reversed and the case remanded.

PUDLOWSKI, P.J., concurs.

KAROHL, J., concurs in separate opinion.

KAROHL, Judge, concurring.

I concur in the holding that summary judgment for defendant city was improper. City had a non-delegable duty to maintain its sidewalks or to warn of known dangers or dangers discoverable by exercise of ordinary care. However, I also find the city was not free of a duty to repair a known danger in the sidewalk simply because part of the sidewalk was also part of a sewer system. The area of danger was both sidewalk and sewer system.

The relevant provisions of MSD's charter are quoted in the principal opinion. They operate to transfer "existing sanitary and storm water sewer systems and facilities ... together with all ... easements ..." to the use of MSD. They also provide MSD "shall exclusively operate, maintain, and control said systems and facilities." But, MSD does not operate, maintain or control sidewalks. Within the boundaries of defendant City it provides and maintains sidewalks. It did not transfer custodianship of sidewalks to MSD. It transferred sewer systems and facilities. Both MSD and defendant City had a duty to plaintiff to repair a known defect in the city sidewalk in an area which is also part of a sewer system. The "exclusive" provision should be applied to qualify sewer systems not as a shield for the city to excuse breach of a duty to repair a known sidewalk defect. We need not decide the resulting relationship between defendant city and MSD where both have a duty to repair. The MSD charter is not decisive on those issues.