Joyce LAHR, Plaintiff–Appellant,

v.

**LAMAR R–1 SCHOOL DISTRICT,**
Defendant–Respondent.

No. 21547.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 23, 1997.

Roger Johnson, Hershewe & Gulick, P.C., Joplin, for Appellant.

William R. Robb, Timothy B. O'Reilly, Price, Fry & Robb, P.C., Springfield, for Respondent.

SHRUM, Judge.

This is a suit by Joyce Lahr (Plaintiff) for damages she sustained when she slipped, fell, and suffered injuries. The accident happened after Plaintiff departed from a sporting event at Lamar R–1 School District (District). Plaintiff fell as she was preparing to enter her car parked on Sixth Street. The trial court entered summary judgment for District and Plaintiff appeals.

The issue presented is whether undisputed material facts exist to prove that District did not, as a matter of law, owe a duty to Plaintiff in tort for the place where Plaintiff fell. We answer, "Yes." We affirm.

On February 26, 1993, Plaintiff attended an event at the District's gymnasium. Upon arriving, she twice drove through the school parking lot but could find no place to park. Plaintiff testified: "[I] saw some cars going around to the side of the gym, so I followed them." When she saw the other cars parking on a paved street south of the gymnasium, she too parked there. This street, designated by the City of Lamar (City) as Sixth Street, runs east and west. Once parked on the street, Plaintiff's car faced north. Her deposition testimony on this question included the following:

"Q. So they were single file? All the cars were parked single file along that road facing the gym, then?

A. [by Plaintiff] Yes."

Later, Plaintiff came out of the gymnasium and went back to her car. Once Plaintiff was five to six feet out into Sixth Street, she slipped and fell. This happened as she started to unlock the passenger side of her car.

In her petition, Plaintiff alleged District breached its duty to maintain and make its property "safe for use and without hazard." Specifically, Plaintiff alleged that District allowed its "parking lot" pavement "to be in a dangerous, slick and unsafe condition," did not inspect the area, did not warn of the condition or remedy it, and failed to barricade the area.

The place on Sixth Street where Plaintiff fell is "encompassed in the legal description of the property on which the new Lamar High School sits." However, attached to District's summary judgment motion were evidentiary affidavits that District relied on as proof that City—not District—controlled

and possessed this part of Sixth Street. District also relied on the affidavits to prove that they were not making special use of the street, i.e., as a parking lot. Later herein, we set forth the details of these affidavits.

Plaintiff offered no evidence to contradict District's affidavits.

In sustaining District's motion for summary judgment, the trial court found that District neither possessed nor controlled the land where Plaintiff fell; consequently, it concluded, as a matter of law, that District owed no duty to Plaintiff at that location and dismissed Plaintiff's suit. This appeal followed.

The criteria for summary judgment was exhaustively examined and reviewed in *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo.banc 1993). As recognized there, the issue is whether the moving party has an undisputed right to judgment as a matter of law. *Id.* at 380[12].

Summary judgment is sustainable only when there is no genuine issue of material fact. Rule 74.04(c)(3). The burden is on the moving party to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *ITT*, 854 S.W.2d at 380. A "defending party" is entitled to summary judgment when "the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements...." *Id.* at 381[16]. When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, resolving any doubts in favor of that party. *Id.* at 376[1]. On the other hand, "[f]acts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* at 376[2].

A plaintiff asserting negligence must prove "[t]he existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty

and, that plaintiff's injury was proximately caused by defendant's failure." *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710[2] (Mo. banc 1990). The only issue before us is duty.

The duty to use reasonable and ordinary care to prevent injury to an invitee is ordinarily imposed on the premises' owner. *Hunt v. Jefferson Arms Apartment Co.*, 679 S.W.2d 875, 879[2] (Mo.App.1984) (citing *Behnke v. City of Moberly*, 243 S.W.2d 549, 554[8,9] (Mo.App.1951)). Here, District concedes that the legal description for its new school encompasses the land where Plaintiff fell on Sixth Street. As the landowner of record, District is presumed to have possession of its land without evidence showing otherwise. *Huston v. Graves*, 213 S.W. 77, 79[4] (Mo.1919); *Hooks v. Spies*, 583 S.W.2d 569, 573[8] (Mo.App.1979). *See also*, RESTATEMENT (SECOND) OF TORTS § 328E (1965).

A landowner, however, is often relieved of its duty to protect an invitee where such owner has relinquished possession and control of the premises to another and the premises are not in an unsafe condition at the time of the surrender. *See McKeighan v. Kline's, Inc.*, 339 Mo. 523, 98 S.W.2d 555, 559–60 (1936); *Hunt*, 679 S.W.2d at 880. *See generally*, 65 C.J.S. *Negligence*, § 92 at 1044–45 (1966); RESTATEMENT (SECOND) OF TORTS §§ 328, 343, 356 (1965). The fact that possession or occupation underlie most forms of premises liability is said to result from the fact that the person in possession ordinarily is in the best position to discover and control its dangers. *See* W. PAGE KEETON, ET AL., PROSSER AND KEATON ON THE LAW OF TORTS § 57 at 386 (5th ed.1984).

When considering premises liability, the RESTATEMENT (SECOND) OF TORTS § 328E (1965) defines "possessor of land" as follows:

"(a) a person who is in occupation of the land *with intent to control it* or

"(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

"(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)." (emphasis supplied).

The term "possession" as used in this context is strictly in the factual sense. *See Hunt*, 679 S.W.2d at 880 (citing RESTATEMENT (SECOND) OF TORTS § 328E, Committee's Comment (1965)).

■ Plaintiff's third point urges reversal of the judgment because District's evidence "does not show prima facie that the city of Lamar . . . possessed and controlled the portion of Sixth Street where [Plaintiff] fell." In her brief, Plaintiff concedes the existence of uncontradicted evidence that City improved, maintained, repaired, and named "Sixth Street," yet insists there is no evidence that the City "intended" to control Sixth Street. Without evidence of City's intent to control says Plaintiff, District's claim that it owed no duty to Plaintiff fails.

The following are quotes and summaries from District's affidavits:

*Dwain E. Rutledge:* For twenty-five years, he was District's "Supervisor of Buildings and Grounds." As such, he was "in charge of all maintenance of school grounds, including upkeep, repair, and making sure the grounds [were] safe for people who . . . enter[ed] . . . [District's] property. . . ." To his knowledge, District "never exercised any sort of control, or [took] any actions which would indicate the school's ownership of" the place where Plaintiff fell. District's staff and faculty assumed that the questioned part of Sixth Street was the City's property. During his tenure, District had never designated the questioned area as a parking lot nor had anyone connected with District ever directed people to use it as a parking lot. District employees had not repaired or maintained this part of Sixth Street nor were they directed to "alter, repair or maintain" this area "in any way." Also, District employees had never "shoveled, scrapped, removed, or tried to alleviate conditions arising out of the natural accumulation of ice, snow, rain or any other natural . . . condition." Instead, it has been the City that "at various times . . . repaired, grated, paved, and provided general maintenance to said area. . . ." In his affidavit, Rutledge also stated: "[T]he referenced portion" of this street had "been used as a public thoroughfare. . . ." The City "[e]rected a sign designating" this road as "6th Street."

*Barbara D. Burns:* She served as District's superintendent for approximately seven years. She and District's staff had "always assumed" that the area in question was "City property, belonging to and controlled by the City of Lamar." To Burns' knowledge, "[n]o one associated with . . . District [had] exercised any control, ownership, or undertaken any maintenance or remedial action whatsoever on the said portion of Sixth Street." District had "never referred to or designated" the area in question "as private property" or "as a parking lot." Nor had District "exercised any right to exclude the general public from said road" or "directed people to park on the road during school events. . . ." Over the last seven years, the City had done "[v]arious projects to maintain, repair and develop said portion of Sixth Street. . . ." Specifically, the City had "pav[ed] and construct[ed] curbs for the street, grat[ed], and clear[ed] ice and snow from the street, spread[ ] salt over the street, and erect[ed] a sign which notifie[d] the general public that the street [was] a City street called 'Sixth Street.' "

*Stuart L. Owsley:* He was the architect who designed District's new high school building in 1986. Before construction on the new building commenced, a gravel road called Sixth Street was located south of what is now the new gymnasium. As the various buildings, roads, and parking lots were constructed as part of the 1986 building program, "[n]o person associated with either . . . District or Stuart Owsley & Associates, or subcontractors working for such school or company, altered, repaired, paved, changed, or provided maintenance to the portion of Sixth Street directly south of what is now Lamar High School gymnasium." All parties involved in the construction considered this portion of Sixth Street as "property of the City." No one associated with District ever stated or implied to Owsley that the road was under the control of District.

In deciding intention, conduct is an important factor because actions speak louder than words. *See Barrett v. Parks*, 352 Mo. 974, 180 S.W.2d 665, 666 (1944). Thus, the rule

has evolved that where the behavior of an actor is at odds with its professed intent, the former will prevail. *See State v. Mueller,* 388 S.W.2d 53, 60 (Mo.App.1965).

In *Mueller,* the trial court entered a summary judgment declaring that appellant had forfeited his office as alderman as he was no longer a resident of the ward. Mueller's affidavit asserted his residence was in the ward where he was elected. In sustaining the summary judgment, the western district stated:

"[A] persons' testimony as to his intention is simply a statement designed to create evidence of it. As it must be accepted on faith it should be received with caution, and when in conflict with other evidence on the subject, ought always to be subordinated to it; for it would be a curious rule that would allow a litigant by so natural and so ready an expedient to control the outcome of his case. . . . [W]e are obliged to hold that Mr. Mueller's testimonial avowals of intent, standing alone in opposition to all the other evidence, are as a matter of law too insubstantial to raise a genuine issue as to the ultimate fact of his legal residence."

*Id.* at 60.

Here, Plaintiff produced no evidence about City's intent, whereas District adduced substantial evidence through the affidavits concerning City's behavior and conduct regarding this street. The City's actions regarding this road spoke volumes about its intent to control the road and nothing contradicted that evidence. Evidence that the City was maintaining, repairing, grating, paving, clearing ice and snow, spreading salt, and naming the area Sixth Street, is sufficient to prove that at the time Plaintiff fell, City intended to control the place where she fell. Moreover, District's evidence established it did not have the requisite intent to control the street to qualify as a "possessor" for purposes of imposing premises liability on it. *See Bowman v. McDonald's Corp.,* 916 S.W.2d 270, 285 n. 4 (Mo.App.1995).

District has shown that there is no genuine issue of material fact on the question of City's intent to control the place where Plaintiff fell at the time she fell. *See Mueller,* 388 S.W.2d at 60. Also, District has produced substantial and uncontradicted evidence that it did not intend to possess, co-possess, or control Sixth Street at the time and place where Plaintiff fell. *See Bowman,* 916 S.W.2d at 285–86. Accordingly, District has shown that City exercised such control over the road that District's duty of care as owner and presumed possessor was supplanted. Plaintiff's arguments to the contrary are rejected. Point III is denied.

Plaintiff's first point urges reversal on the theory that "evidence on record would permit a jury to find that District used the road where [Plaintiff] fell as a parking lot, and such special use gave rise to a duty of care."

■ Although the owner or occupier of land abutting a public street has no duty to use reasonable care to keep such street clear of ice and snow, there are exceptions to this rule. *O'Connell v. Roper Elec. Co.,* 498 S.W.2d 847, 851 (Mo.App.1973). One such exception is termed the "special use" exception. *Id.* This exception applies when an abutting property owner has made a special use of the public thoroughfare, such as building within the public right-of-way a connecting driveway leading from the owner's premises to the public street. *Id.* at 851[1].

■ Here, Plaintiff maintains that District put Sixth Street to special use because District "required its invitees to park on public roads to attend its basketball game[s], and the District knew this and benefitted from it." Plaintiff's argument fails for several reasons.

First, Plaintiff's petition alleges that Plaintiff "slipped and fell . . . [on District's] . . . patron parking lot. . . ." Plaintiff's petition does not allege she fell on Sixth Street. As Plaintiff structured her petition, the "patron parking lot" allegation does not reveal the claim she now makes that District was making "special use" of the street for a parking lot. Moreover, Plaintiff offered no evidence to support her claim of special use. Had such evidence been offered, it should have been rejected upon timely objection as it would have been outside the pleadings. Therefore, Plaintiff's first point is without

merit. *See Ielouch v. Warsaw R–IX Schs.*, 908 S.W.2d 769, 771 (Mo.App.1995).

Second, contrary to Plaintiff's argument, there is no evidence that District "required" its patrons to park on the public street. District's evidence was that it never directed people to use the street for parking. Also, District's affidavits stated that it never referred to or designated the place where Plaintiff fell as a parking lot. Plaintiff offered no evidence to contradict District's affidavits; consequently, the trial court was to take the facts set forth therein as true. *ITT*, 854 S.W.2d at 376[2].

Third, Plaintiff's reliance on *O'Connell*, 498 S.W.2d 847, is misplaced. That case is too factually dissimilar to support her claim that District specially used the street as a parking lot. In *O'Connell* the plaintiff slipped on ice located "just a ... step from where the street and this approach met." [1] *Id.* at 851. There was evidence that convinced the court that "[defendant] Roper Electric Company made a special use of the entire driveway for its own benefit and convenience as a 'private' means of ingress and egress to the company's office and attempted to restrict the use thereof.... [T]he evidence was undisputed that the driveway was required to be used as a walkway for persons having business with Roper Electric Company." *Id.* at 851–52. The defendant also had signs painted on both sides of the driveway which read, "Please Park In Street." Thus, *O'Connell* does illustrate an affirmative special use of public property by a private entity. However, none of the facts found in *O'Connell* exist in this case.

Fourth, Plaintiff's argument that a duty to protect Plaintiff arose in District based on a special use theory because District had constructive knowledge that its invitees often parked on the street, is not supported by any facts. Evidence that on the day Plaintiff fell, she followed other cars to the south side of the gymnasium and parked on the street before going into the gymnasium does not establish District's constructive knowledge. Moreover, Plaintiff does not support this ar-

gument by authority. In fact, the argument is contrary to Missouri case law.

Thus, in *Cohen v. West County Motor Co.*, 877 S.W.2d 143 (Mo.App.1994), Judge Grimm, writing for the eastern district, said:

> "Here ... the record contains no evidence that defendant used Park Lane for any reasons other than for its intended purposes. The mere fact that its customers were required to cross the street to conduct business does not bring it within the special use exception. *See also Lange v. Wehrenberg Theaters, Inc.*, 870 S.W.2d 880, 883 (Mo.App. E.D.1993) (The plaintiff was injured while using a sidewalk adjacent to a theater. He claimed abutting owner and lessee had a duty to maintain the sidewalk. In rejecting application of the special use exception, this court stated, 'It does not apply to using the sidewalk as is, as an ingress or egress to an owner's property.')."

*Id.* at 145–46.

On this record, Plaintiff has shown no genuine issue of material fact about a special use of the street by District. Plaintiff's first point is denied.

Plaintiff's second point asserts that, even if District did not possess or control the place where Plaintiff fell, its duty to keep that area safe was non-delegable. Consequently, District was still under a duty to maintain such area and keep it in a reasonably safe condition. Plaintiff contends that "[n]ot even another party's undisputed assumption of possession could relieve [District] from its burden." To support this argument, Plaintiff cites *Schweizer v. City of Maplewood*, 784 S.W.2d 842 (Mo.App.1990).

In *Schweizer*, the City of Maplewood transferred complete custodianship of *part* of a public sidewalk to the St. Louis Sewer District (MSD) for use in its sewer system. The plaintiff was injured when she fell through a manhole cover that was above the sewer. A summary judgment for the City of Maplewood was reversed. The reversal was based on the general rule that places the primary obligation on the municipality to

---

1. The "approach" was described as the part of the driveway between the street and sidewalk, which was originally paved by the City, but at the landowner's expense. 498 S.W.2d at 850.

maintain public sidewalks in a reasonably safe condition and declares that such duty is one that a municipality cannot delegate to others in any fashion. *Id.* at 843.[2] The *Schweizer* court found that despite MSD's control over the property, "nothing in the transfer of custodianship of that section of the sidewalk to MSD operated to eliminate City's duty to warn of a dangerous condition in that section of the sidewalk." *Id.* at 843–44.

District is not a municipality; thus, it is not subject to the special rule that imposes continuous non-delegable duties on municipalities to make their public streets and sidewalks safe and warn of dangers. *See Dorlon,* 843 S.W.2d at 934. *Schweizer* simply is not authority that supports the argument Plaintiff advances in her second point.

While non-delegable duties in tort are imposed on parties in some factual situations, Plaintiff does not cite authority that supports her claim that District had a duty to keep the area safe or warn of dangers despite uncontradicted evidence that City was in possession of the premises when Plaintiff fell. Nor does our independent research reveal such authority. We remain persuaded that District has shown that City exercised such control over the street that District's duty of care as owner and presumed possessor was supplanted. Point II is denied.

The judgment is affirmed.

PARRISH, P.J., and BARNEY, J., concur.

2. For an extended discussion of this rule, see *Dorlon v. City of Springfield,* 843 S.W.2d 934, 945–46 (Mo.App.1992).