

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| GWENDOLYN MEDLEY, | ) | No. ED101434 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1222-CC09664 |
| | ) | |
| JOYCE MEYER MINISTRIES, INC., | ) | Honorable Edward W. Sweeney, Jr. |
| | ) | |
| Appellant. | ) | Filed: April 7, 2015 |

Joyce Meyer Ministries, Inc. ("Defendant") appeals the judgment entered upon a jury verdict awarding Gwendolyn Medley ("Plaintiff") $280,000.00 on her personal injury claim arising out of Plaintiff's trip and fall during a conference hosted by Defendant at the Edward Jones Dome ("the Dome"). We affirm.

## I.      BACKGROUND

### A.      Evidence Adduced at Trial and Plaintiff's Personal Injury Claim

The following evidence was adduced at the jury trial on Plaintiff's personal injury claim. On September 17, 2010, Defendant hosted a women's conference at the Dome ("the conference"). At least 12,000 women, including Plaintiff, attended the conference.

Defendant set up a "boutique" area in the Dome for the display and sale of its merchandise to women attending the conference. Defendant considered the boutique to be a store. The merchandise at the boutique included items such as t-shirts, tote bags, purses, and key chains.

In the boutique area, Defendant placed a display which the parties referred to at trial as the "window display." The window display was a three-dimensional storefront, measuring sixteen feet long, eight feet tall, and forty-two inches deep. The front of the window display had a black frame and was twelve inches wide along its length, including a part that rested on the floor of the boutique. The window display had two purposes, to "look pretty" and to notify attendees of the conference of the boutique's location.

Defendant made the decision to create the window display, to use the display, and where to place the display. Defendant also designed and constructed the window display and made a floor plan which included Defendant's desired location of the display. After Defendant submitted the floor plan to the Dome, Defendant placed the window display in the boutique at the place of Defendant's choosing as set forth in Defendant's floor plan. Two of Defendant's employees, Michelle Wieczorek and Lonnie Turnbeaugh, admitted at trial that it would have been feasible for Defendant to place the window display in another location at the Dome. Turnbeaugh specifically testified that, "We could put [the window display] anywhere we wanted to."

On the day of the conference, Plaintiff went to the boutique area to purchase a t-shirt. At that time, there were several women waiting in line to get into the boutique, and witnesses at trial described the environment as "chaotic" and "congested." Employees from Defendant's advertising department managed traffic flow in and out of the boutique, holding people back and allowing only a few women into the boutique at a time until others exited.

Plaintiff eventually entered the boutique and purchased a t-shirt. As Plaintiff began exiting the boutique, she stepped toward the front of the window display to allow another person room to pass beside her. Plaintiff then hit her lower leg on the display and tripped and fell, scraping her shin on the board at the bottom that framed the display and injuring her ankle.

2

Subsequently, Plaintiff sought medical treatment for her injuries, and she filed a personal injury claim against Defendant based on a theory of premises liability. Plaintiff's petition alleged in relevant part that, (1) because of the relationship between Defendant and Plaintiff, Plaintiff was an invitee of the Defendant; (2) "Defendant controlled or had the right to control that area of the premises in which Defendant constructed, or caused to be constructed, the [b]outique and in which Defendant placed, or caused to be placed, the [window] [d]isplay"; (3) Defendant negligently placed the window display in an area Defendant anticipated would be crowded and congested with attendees of the conference; and (4) Plaintiff suffered injuries and damages as a result of Defendant's negligence.

**B.      Evidence Excluded at Trial**

At trial, Defendant attempted to present evidence of a license agreement entered into by the St. Louis Convention and Visitors Commission ("the CVC")[1] and Defendant which allowed Defendant to use a portion of the Dome for the purpose of hosting the conference. Defendant also attempted to present other documentary evidence regarding the CVC's involvement in the conference. Plaintiff objected to the admission of the documents on the basis that they were not relevant, and the trial court sustained the objection and considered the documentary evidence for the purposes of Defendant's offer of proof.[2]

Defendant then made an offer of proof during which multiple witnesses testified regarding the CVC's involvement in the conference and the CVC and Defendant's relationship. After the offer of proof, the trial court found in pertinent part that, (1) there was no evidence to suggest that Defendant was not in possession of the premises where Plaintiff's injury occurred;

---

[1] The CVC is the operator of the Dome.
[2] We note that Plaintiff also objected to the admission of the documents on the basis that Defendant failed to produce them in discovery in response to Plaintiff's request for production, and the trial court sustained the objection. Nevertheless, for purposes of this appeal we will only discuss whether it was appropriate for the trial court to sustain Plaintiff's objection to the admission of the documents on the basis that they were not relevant.

3

(2) the only relevant relationship in the case was the relationship between Plaintiff and Defendant; and (3) the evidence presented by Defendant in its offer of proof was not relevant. Accordingly, the trial court excluded evidence of the license agreement, excluded evidence regarding the CVC's involvement in the conference, and excluded testimony regarding the CVC and Defendant's relationship.

## C.     Relevant Procedural Posture

After Defendant's offer of proof, the court held an instruction conference. Plaintiff's proposed verdict director, which the trial court submitted as Instruction No. 8, was based on Missouri Approved Instruction ("MAI") 22.03 (7th ed. 2012)[3] and MAI 37.01 and stated:

> In your verdict you must assess a percentage of fault to [Defendant], whether or not [P]laintiff was partly at fault, if you believe:
>
> First, there was a window display on the floor of [D]efendant's boutique and as a result the floor was not reasonably safe, and
>
> Second, [D]efendant knew or by using ordinary care could have known of this condition, and
>
> Third, [D]efendant failed to use ordinary care to remove it, and
>
> Fourth, such failure directly caused or directly contributed to cause damage to [P]laintiff,
>
> Unless you believe [P]laintiff is not entitled to recover by reason of Instruction No. 9.

Instruction No. 9, which was also submitted to the jury, stated:

> Your verdict must be for [D]efendant if you believe that the window display constituted a dangerous condition that was so open and obvious that [P]laintiff knew or by using ordinary care could have known the condition was not reasonably safe, unless you believe that [D]efendant should have anticipated that [P]laintiff might be harmed by the window display despite such danger being obvious.

Comparative fault instructions were also submitted to the jury.

---

[3] All references to MAI are to Missouri Approved Jury Instructions (7th ed. 2012).

4

During the instruction conference, Defendant attempted to submit Instruction C, which stated, "Your verdict must be for [D]efendant if you believe that [D]efendant was not in possession or control of the premises." However, the trial court refused to submit Instruction C.

After the instruction conference, the jury entered a verdict finding that Plaintiff's total damages were $400,000.00. The verdict assessed Defendant seventy percent at fault and Plaintiff thirty percent at fault, thereby awarding Plaintiff $280,000.00 in damages. The trial court entered a judgment in accordance with the jury's verdict, and Defendant subsequently filed a motion for new trial, which the trial court denied. Defendant appeals.

## II.    DISCUSSION

Defendant raises three points on appeal. Defendant's first and third points on appeal assert that the trial court erred in excluding evidence. Defendant's second point on appeal contends that the trial court erred in refusing to submit Instruction C.

### A.    Exclusion of Evidence

Because Defendant's first and third points on appeal relate to the trial court's exclusion of evidence, we will consider them together. Defendant's first and third points claim the trial court erred in excluding the CVC and Defendant's license agreement from evidence, in excluding evidence regarding the CVC's involvement in the conference, and in excluding testimony concerning the relationship between the CVC and Defendant. The trial court excluded the evidence on the grounds it was not relevant.[4] The trial court found the evidence was not relevant because it did not suggest that Defendant was not in possession of the premises where Plaintiff's

---

[4] Defendant claims that the trial court excluded the license agreement on the grounds that the agreement was a lease rather than a license agreement and that the CVC and Defendant's relationship was that of landlord-tenant rather than licensor-licensee. In support of this claim, the only portion of the record to which Defendant refers and cites to is an isolated statement by the trial court that, "As I see it, [the Dome is] a rented premises. That's what it is, [t]he Dome, CVC, charges [ ] Defendant a price to use a portion of the convention center for [its] boutique." Despite that isolated statement and any other potential isolated statements made by the trial court, we find that a review of the entire transcript reveals that the trial court excluded the license agreement from evidence on the grounds that the agreement was not relevant.

injury occurred and because the only relevant relationship in the case was the relationship between Plaintiff and Defendant.

## 1.	Standard of Review and Law Regarding Questions of Relevancy

The trial court has broad discretion to exclude evidence and to rule on questions regarding the relevancy of evidence, and our Court will not reverse the trial court's rulings absent an abuse of discretion. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 766 (Mo banc 2011). *In re Calleja*, 360 S.W.3d 801, 803 (Mo. App. E.D. 2011). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration." *Calleja*, 360 S.W.3d at 803.

Evidence is admissible only if it is both logically and legally relevant. *Mengwasser v. Anthony Kempker Trucking, Inc.*, 312 S.W.3d 368, 372 (Mo. App. W.D. 2010). Evidence is logically relevant if it tends to prove or disprove a fact in issue. *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 185 (Mo. App. W.D. 2012). Evidence is legally relevant where its probative value outweighs its prejudicial effect. *Mengwasser*, 312 S.W.3d at 372.

In order to determine whether the trial court abused its discretion in excluding the license agreement, the evidence regarding the CVC's involvement in the conference, and the testimony concerning the relationship between the CVC and Defendant, we must examine the applicable law of premises liability.

## 2.	Premises Liability

Missouri Courts have adopted the Restatement (Second) of Torts (1965)[5] with regard to premises liability. *See Harris v. Niehaus*, 857 S.W.2d 222, 225-26 (Mo. banc 1993) (adopting, *inter alia*, Restatement (Second) of Torts sections 343, 343A, and 332); *Bowman v. McDonald's*

---

[5] All further references to the Restatement (Second) of Torts are to the 1965 version.

6

*Corp.*, 916 S.W.2d 270, 285 (Mo. App. W.D. 1995) (adopting, *inter alia*, Restatement (Second) of Torts section 328E) (overruled on other grounds). Generally, the status of an entrant on the land, i.e., whether the entrant is a trespasser, licensee, or an invitee, determines the specific duty of care owed by the possessor of land. *Adams v. Badgett*, 114 S.W.3d 432, 436 (Mo. App. E.D. 2003). A possessor of land is liable for injuries suffered by an invitee due to a condition on the land if, (1) the possessor "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee[ ]"; (2) the possessor "should expect that [the invitee] will not discover or realize the danger, or will fail to protect [herself] against it"; (3) the possessor "fails to exercise reasonable care to protect [the invitee] against the danger"; and (4) "[the] activity or condition on the land is [not] known or obvious to [the invitee], unless the possessor should anticipate the harm despite [the] knowledge or obviousness." Restatement (Second) of Torts sections 343 and 343A(1); Restatement (Second) of Torts section 343 cmt. a.

The Restatement defines the terms "invitee" and "possessor." Restatement (Second) of Torts sections 332 and 328E. In this case, Defendant does not dispute that, assuming Defendant was a possessor of the boutique and window display area where Plaintiff was injured, Plaintiff was an invitee of Defendant when she was injured in the area after she purchased a t-shirt from Defendant.[6] However, Defendant does dispute that Defendant was a possessor of the area where Plaintiff was injured. Furthermore, Defendant argues that the license agreement, the evidence regarding the CVC's involvement in the conference, and the testimony concerning the

---

[6] *See Adams*, 114 S.W.3d at 437 (an invitee is a person who enters the premises with the consent of the possessor for the mutual benefit of both parties); Restatement (Second) of Torts section 332(3) (defining an invitee as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land"); Restatement (Second) of Torts section 332 cmt. e (stating that a person who enters a store to make a purchase is an invitee).

7

relationship between the CVC and Defendant was relevant to prove that Defendant was not the possessor.

The Restatement (Second) of Torts defines the term "possessor" in relevant part as a party "who is in occupation of the land with intent to control it." Restatement (Second) of Torts section 328E(a). Under that definition, a non-owner of the premises may be a possessor. *See Bowman*, 916 S.W.2d at 285 ("[o]wnership is not a requirement for possession of the land in order to establish liability under section[ ] 328E . . . of the Restatement"). For purposes of determining whether a person is a possessor, "[t]he important thing . . . is the possession, and not whether it is or is not rightful as between the possessor and some third person." Restatement (Second) of Torts section 328E cmt. a. The term "possession" is often "used to denote the legal relations resulting from the facts." *Id*. Moreover, when the facts surrounding the status of a party-defendant are not in dispute, the determination of whether the defendant is a possessor of land is a question of law. *See Adams*, 114 S.W.3d at 436 (holding that when the facts surrounding the status of an entrant of the land are not in dispute, the determination of whether the entrant is a license or invitee is a question of law).

In ascertaining whether a party intended to control the premises, the party's conduct is an important factor, and we find cases from other states to be persuasive on this issue. *Lahr v. Lamar R-1 School Dist.*, 951 S.W.2d 754, 756, 757 (Mo. App. S.D. 1997). Only a party who actually *exercises* control over the premises is considered a possessor of land who owes a duty to an invitee; a party who merely has a right to control the premises but does not exercise that right owes no such duty. *Millette v. Connecticut Post Ltd. Partnership*, 70 A.3d 126, 132 (Conn. App. Ct. 2013); *Concklin v. Holland*, 138 S.W.3d 215, 221 (Tenn. Ct. App. 2003); *Carroll by Carroll v. Jagoe Homes, Inc.*, 677 N.E.2d 612, 616 (Ind. Ct. App. 1997); *See Lahr*, 951 S.W.2d at 755-58 (evidence that a party other than defendant maintained, repaired, grated, paved, and cleared

8

the area where a plaintiff fell demonstrated that the party intended to control that area for purposes of a "possession" analysis). A party exercises its control over the premises when, *inter alia*, (1) it exercises its right to direct the use of the premises; or (2) it exercises its right to admit people to the premises and exclude people from it. *See id.*; *Madden v. Paschen*, 916 N.E.2d 1203, 1214 (Ill. App. Ct. 2009) (powers associated with control over premises include the power to exclude people from the premises and the power to direct the use of the premises); *Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 658 N.E.2d 1140, 1146 (Ohio Ct. App. 1995) (a defendant controls the premises and is liable when it exercises its right to admit people to the premises and exclude people from it).

### 3. Whether Defendant was a Possessor of the Area Where Plaintiff was Injured

As previously stated, the Restatement (Second) of Torts defines the term "possessor" in relevant part as a party "who is in occupation of the land with intent to control it." Restatement (Second) of Torts section 328E(a). Here, it is undisputed that Defendant was in occupation of the boutique and window display area where Plaintiff was injured, because Defendant's employees set up the area and were stationed and working there. The issues in this case are, (1) whether Defendant occupied the boutique and window display area *with the intent to control it*; and (2) whether the license agreement, the evidence regarding CVC's involvement in the conference, and the testimony concerning the relationship between the CVC and Defendant was relevant to prove that Defendant was not the possessor.

#### i. Evidence Adduced at Trial

The following evidence pertaining to Defendant's intent to control the boutique and window display area was adduced at trial, and this evidence was uncontroverted even by the evidence presented in Defendant's offer of proof. First, there was uncontroverted evidence at trial that Defendant exercised its right to direct the use and placement of the boutique and

9

window display area.  Defendant set up the boutique area and sold its merchandise there during the conference, and it was selling its merchandise during the time of Plaintiff's injury. Defendant made the decision to create the window display, to use the display, and where to place the display.  Defendant also designed and constructed the window display and made a floor plan which included Defendant's desired location of the display.  After Defendant submitted the floor plan to the Dome, Defendant placed the window display in the boutique at the place of Defendant's choosing as set forth in Defendant's floor plan.  Additionally, two of Defendant's employees, Wieczorek and Turnbeaugh, admitted at trial that it would have been feasible for Defendant to place the window display in another location at the Dome.  Turnbeaugh specifically testified that, "We could put [the window display] anywhere we wanted to."

There was also uncontroverted evidence adduced at trial that Defendant exercised its right to admit people to the boutique and exclude people from it.  At the time Plaintiff was injured on the window display in the boutique area, Defendant's employees were managing the traffic flow in and out of the boutique, holding people back and allowing only a few women into the boutique at a time until others exited.

### ii. Evidence Presented During Defendant's Offer of Proof

#### a. Evidence of the CVC's Rights Under the License Agreement

Defendant argues that the evidence of the CVC's rights under the license agreement which was presented during the offer of proof was relevant to prove that Defendant was not the possessor.  Defendant asserts that various provisions of the license agreement demonstrate that the CVC, rather than Defendant, controlled the boutique and window display area.  Defendant specifically points to the provisions of the license agreement which state, (1) the CVC must approve a party's floor plans before any items are placed on the premises floor; (2) "[t]he . . . [p]remises, shall be at all times under the charge and control of the [CVC]"; (3) the CVC

10

reserves the right to determine coverage and numbers for security, safety, and medical personnel; and (4) the CVC "shall at all times have free access to the [p]remises . . ." (this final provision is found in a paragraph titled "right of entry"). We find that those provisions merely demonstrate that the CVC had a right to control the premises of the Dome if it chose. Importantly, the provisions do not indicate that the CVC actually exercised any right to control the boutique and window display area where Plaintiff was injured. As previously stated, only a party who actually *exercises* control over the premises is considered a possessor of land who owes a duty to an invitee; a party who merely has a right to control the premises but does not exercise that right owes no such duty. *Millette*, 70 A.3d at 132; *Concklin*, 138 S.W.3d at 221; *Carroll*, 677 N.E.2d at 616. Because evidence of the CVC's rights under the license agreement did not tend to prove that Defendant was not the possessor of the boutique and window display area, the evidence was not logically relevant, and the trial court did not abuse its discretion in excluding it. *See McGuire*, 375 S.W.3d at 185; *Mengwasser*, 312 S.W.3d at 372.

### b. Evidence of the CVC's Involvement in the Conference

Defendant also claims that evidence presented during the offer of proof regarding the CVC's involvement in the conference demonstrates that the CVC, rather than Defendant, controlled the boutique and window display area. Defendant points to documentary evidence and testimony that the CVC approved Defendant's floor plan and that if Defendant wanted to move the window display it had to get approval from the CVC beforehand. We find that this evidence does not demonstrate that the CVC exercised any right to control the boutique and window display area, especially in light of the uncontroverted evidence adduced at trial that Defendant was the party who actually made the floor plan and controlled the placement of the boutique and window display. As previously stated, there was testimony that, (1) Defendant made the floor plan; (2) Defendant placed the window display in the boutique at the location as

11

set forth in Defendant's floor plan; (3) two of Defendant's employees admitted that it would have been feasible for Defendant to place the window display in another location at the Dome; and (4) one of Defendant's employees specifically testified at trial that "We could put [the window display] anywhere we wanted to."

Defendant points to additional evidence presented during the offer of proof regarding the CVC's involvement in the conference, including that, (1) the CVC was in charge of security personnel and crowd control at the Dome throughout the conference; (2) representatives of the CVC were present at the Dome throughout the set up phase and during the conference; (3) the security plan provided that one of CVC's representatives was supposed to be stationed at the atrium of the Dome on the day of the conference with the responsibility of "ingress/egress;" and (4) the boutique and window display area was located in the atrium of the Dome. Again, we find that none of this evidence demonstrates that the CVC actually exercised any right to control the boutique and window display area where Plaintiff was injured. Defendant presented no specific evidence that any representatives of the CVC were actually present and/or managing crowds at the boutique and window display area at any time during the conference or during the time Plaintiff was injured. Additionally, the uncontroverted evidence at trial was that at the time Plaintiff was injured on the window display in the boutique area, only Defendant's employees were managing the traffic flow in and out of the boutique, holding people back and allowing only a few women into the boutique at a time until others exited. *See Reed v. Beachy Const. Corp.*, 781 N.E.2d 1145, 1147, 1150-51 (Ind. Ct. App. 2002) (defendant-construction company possessed and controlled premises where it was the only party present at the premises at the time of plaintiff's fall).

Based on the foregoing, we find that the evidence regarding the CVC's involvement in the conference did not tend to prove that Defendant was not the possessor of the boutique and

12

window display area. Accordingly, the evidence was not logically relevant, and the trial court did not abuse its discretion in excluding it. *See McGuire*, 375 S.W.3d at 185; *Mengwasser*, 312 S.W.3d at 372.

### c. Evidence of the CVC's and Defendant's Purported Licensor-Licensee Relationship

Finally, Defendant maintains that evidence of the CVC's and Defendant's purported licensor-licensee relationship (testimony regarding the relationship which was presented during the offer of proof as well as specific provisions of the CVC and Defendant's license agreement[7]) is relevant to prove that Defendant was not the possessor of the boutique and window display area. Defendant claims that because the CVC and Defendant had a purported licensor-licensee relationship, the CVC, rather than Defendant, had possession and control over the area where Plaintiff was injured. However, Defendant does not cite to any controlling authority in support of its claim, and we can find none. As indicated above in Sections II.A.2 and II.A.3, the relevant issues in applying the Restatement (Second) of Torts in this case are, (1) the status of Plaintiff as an entrant on the land – which is undisputed here; and (2) whether Defendant was a possessor of the land, i.e., whether Defendant occupied the land with the intent to control it, by actually exercising control over the area where Plaintiff was injured. We find that evidence of the CVC's and Defendant's purported licensor-licensee relationship did not tend to prove that Defendant was not the possessor of the boutique and window display area under the circumstances of this case, where there was no evidence that the CVC occupied the area or no evidence offered that the CVC actually exercised control over the area. Consequently, the trial court did not abuse its

---

[7] The specific portions of the license agreement Defendant refers to are, (1) "this [a]greement constitutes a license to utilize the [p]remises, and nothing herein shall be construed as conveying to [Defendant] any right, title, or possessory interest in the [p]remises of any kind, type, or nature"; and (2) "[a]ll rights and obligations of the parties hereunder shall be interpreted as under a grant of license."

discretion in excluding evidence of the CVC and Defendant's purported licensee-licensor relationship. *See McGuire*, 375 S.W.3d at 185; *Mengwasser*, 312 S.W.3d at 372.

### iii.    Conclusion as to Points One and Three

Because Defendant exercised its right to direct the use and placement of the boutique and window display area where Plaintiff was injured and because Defendant exercised its right to admit people to the area and exclude people from it, Defendant exercised control over the area. *Madden*, 916 N.E.2d at 1214; *Monnin*, 658 N.E.2d at 1146. There was no evidence adduced at trial or presented in Defendant's offer of proof demonstrating that any party other than Defendant exercised control over the boutique and window display area. Accordingly, the facts surrounding the status of Defendant are not in dispute, Defendant occupied the boutique and window display area with the intent to control it, and therefore, Defendant was a possessor of the boutique and window display area as a matter of law. *See Adams*, 114 S.W.3d at 436; Restatement (Second) of Torts section 328E(a); *Millette*, 70 A.3d at 132; *Concklin*, 138 S.W.3d at 221; *Carroll*, 677 N.E.2d at 616.

Moreover, the evidence presented during Defendant's offer of proof (the license agreement, the evidence regarding CVC's involvement in the conference, and the testimony concerning the relationship between the CVC and Defendant) did not tend to prove Defendant was not the possessor of the boutique and window display area. Therefore, the evidence was not logically relevant, and the trial court did not abuse its discretion in excluding it. *See McGuire*, 375 S.W.3d at 185; *Mengwasser*, 312 S.W.3d at 372. Points one and three are denied.

## B.    Refusal to Submit Instruction C

In its second point on appeal, Defendant contends the trial court erred in refusing to submit Defendant's proposed Instruction C to the jury. Instruction C stated, "Your verdict must

14

be for [D]efendant if you believe that [D]efendant was not in possession or control of the premises."

We initially note that Instruction C is an affirmative converse instruction.[8] *See Hiers v. Lemley*, 834 S.W.2d 729, 734 (Mo. banc 1992) (an affirmative converse instruction presents a hypothetical ultimate issue which, if true, would defeat the plaintiff's claim and the instruction begins, "Your verdict must be for the defendant if you believe . . ..").

We review the trial court's refusal to submit an affirmative converse instruction de novo. *Wheeler ex rel. Wheeler v. Phenix*, 335 S.W.3d 504, 512 (Mo. App. S.D. 2011). An affirmative converse instruction is appropriate where the verdict directors assume as true or omit a disputed ultimate issue of fact. *Hiers*, 834 S.W.2d at 735; *Quinn v. Lenau*, 996 S.W.2d 564, 570 (Mo. App. E.D. 1999). Moreover, an affirmative converse instruction should only be given if it is supported by the evidence. *Hiers*, 834 S.W.2d at 736.

In this case, we find that Instruction Nos. 8 and 9 properly submitted all disputed ultimate issues of fact to the jury, namely the factual issues relating to whether Defendant as the possessor of land fell below the standard of care owed to Plaintiff as an invitee.[9] *See Quinn*, 996 S.W.2d at 568 ("[t]he applicable standard of care is a question of law for the court, and the determination of whether the possessor of land fell below that standard of care is a question of fact for the jury"). Instruction No. 8 was based on MAI 22.03[10] and MAI 37.01[11] and stated:

> In your verdict you must assess a percentage of fault to [Defendant], whether or not [P]laintiff was partly at fault, if you believe:

---

[8] Missouri Courts generally disfavor affirmative converse instructions. *Jone v. Coleman Corp.*, 183 S.W.3d 600, 605 (Mo. App. E.D. 2005); *See Hiers v. Lemley*, 834 S.W.2d 729, 735-36 (Mo. banc 1992) (setting forth the reasons why affirmative converse instructions are disfavored).

[9] The parties' comparative fault was an additional disputed ultimate issue of fact which was submitted to the jury, but it is not at issue on appeal.

[10] As is reflected in the title of MAI 22.03, MAI 22.03 is the verdict directing instruction for "[o]wners and [o]ccupiers of [l]and" when an "[i]nvitee [is] [i]njured."

[11] MAI 37.01 is the verdict directing modification in a case containing a comparative fault instruction.

First, there was a window display on the floor of [D]efendant's boutique and as a result the floor was not reasonably safe, and

Second, [D]efendant knew or by using ordinary care could have known of this condition, and

Third, [D]efendant failed to use ordinary care to remove it, and

Fourth, such failure directly caused or directly contributed to cause damage to [P]laintiff,

Unless you believe [P]laintiff is not entitled to recover by reason of Instruction No. 9.

Instruction No. 9 submitted Defendant's affirmative defense to the jury which Defendant was permitted to do pursuant to MAI 22.03. Instruction No. 9 stated:

Your verdict must be for [D]efendant if you believe that the window display constituted a dangerous condition that was so open and obvious that [P]laintiff knew or by using ordinary care could have known the condition was not reasonably safe, unless you believe that [D]efendant should have anticipated that [P]laintiff might be harmed by the window display despite such danger being obvious.

Defendant argues that the issue of possession and control was a factual issue that should have also been submitted to the jury. However, there was no evidence to support the language set forth in Defendant's Instruction C requiring the jury to enter a verdict for Defendant if they believed that "[D]efendant was not in possession or control of the premises." As we concluded in Section II.A.3.iii, there was no evidence adduced at trial or presented in Defendant's offer of proof demonstrating that any party other than Defendant exercised control over the boutique and window display area. Consequently, the facts surrounding the status of Defendant are not in dispute, Defendant occupied the boutique and window display area with the intent to control it, and therefore, Defendant was a possessor of the boutique and window display area as a matter of law. *See Adams*, 114 S.W.3d at 436; Restatement (Second) of Torts section 328E(a); *Millette*, 70 A.3d at 132; *Concklin*, 138 S.W.3d at 221; *Carroll*, 677 N.E.2d at 616. Because Instruction C

16

was not supported by the evidence, the trial court did not err in refusing to submit it to the jury. *See Hiers*, 834 S.W.2d at 736. Point two is denied.

## III. CONCLUSION

The judgment entered upon a jury verdict awarding Plaintiff $280,000.00 on her personal injury claim is affirmed.

ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.