

# In the
# Missouri Court of Appeals
## Western District

A.R.R.,

        Appellant,

v.

TAU KAPPA EPSILON FRATERNITY, INC.,

        Respondent;

AND

DELTA NU TEKE HOUSE ASSOCIATION,

        Respondent.

WD84545

OPINION FILED:

APRIL 12, 2022

---

**Appeal from the Circuit Court of Nodaway County, Missouri**
**The Honorable Roger M. Prokes, Judge**

**Before Division Three: Anthony Rex Gabbert, Presiding Judge,**
**Lisa White Hardwick, Judge, Thomas N. Chapman, Judge**

A.R.R. appeals the circuit court's Judgment granting Tau Kappa Epsilon Fraternity's ("TKE") and TKE Delta Nu House Association's ("House Association") motions for summary judgment on Counts II, III, and IV in A.R.R.'s "First Amended Petition for Damages" which alleged, as relevant to this appeal, "Premise Liability Against All Defendants" in Count II, "Negligent Supervision Against All Defendants" in Count III, and "Negligence Against All

Defendants" in Count IV.[1]  A.R.R.'s claims stem from the defendants' alleged actions and/or inactions in relation to an alleged sexual assault of A.R.R. during a 2015 Northwest Missouri State University Delta Nu Chapter of TKE Halloween Party.  A.R.R. asserts four points on appeal which contend that the circuit court, 1) erred in granting summary judgment in favor of TKE and House Association ("the defendants" collectively) on Count II of the First Amended Petition, arguing that she presented summary judgment facts supporting a claim for premises liability, 2) erred in granting summary judgment in favor of the defendants on Count III, arguing that she presented summary judgment facts supporting a claim for negligent supervision, 3) erred in granting summary judgment in favor of the defendants on Count IV, arguing that she presented summary judgment facts supporting a claim for negligence, and 4) erred in granting summary judgment in favor of the defendants, arguing that she presented summary judgment facts supporting a claim for negligence based an assumed duty.  We affirm.

**Background and Procedural Information**

A.R.R. filed a First Amended Petition on October 15, 2019, alleging that she was sexually assaulted on or about October 31 or November 1, 2015, at the fraternity house of Northwest Missouri State University's Delta Nu of TKE ("Delta Nu").[2]  A.R.R. alleged that on October 31-November 1, 2015, Delta Nu hosted, sponsored, and endorsed a Halloween party at the fraternity house where alcohol was served to A.R.R.  While at the fraternity house, A.R.R. became

---

[1] A.R.R. does not appeal the circuit court's grant of summary judgment to the defendants named in Count I ("Sexual Abuse and/or Battery Against TKE and Delta Nu") on statute of limitations grounds.

[2] Delta Nu was dismissed as a party, without prejudice, following the circuit court's Judgment.

2

intoxicated and a Delta Nu fraternity member sexually assaulted, battered, and raped A.R.R. while she was under the influence of alcohol and, at times, unconscious.

As relevant to this appeal, in Count II titled "Premise Liability," A.R.R. alleged that, as owners and operators of the premises where the assault took place, the defendants had a duty to maintain the premises in a reasonably safe condition, knew or could have known that its premises were not in a reasonably safe condition, failed to adhere to their duty and were negligent, and that A.R.R. suffered harm as a result. In Count III titled "Negligent Supervision," A.R.R. alleged that TKE knew or should have known of the dangerous and exploitive propensities exhibited by Delta Nu and/or that Delta Nu was an unfit fraternity chapter, and negligently failed to supervise Delta Nu members who harmed A.R.R. Further, that House Association knew or should have known of the dangerous and exploitive activities taking place at the fraternity house, and despite such knowledge, failed to supervise the actions taking place which resulted in A.R.R.'s harm. In Count IV titled "Negligence," A.R.R. alleged that the defendants had a duty to control, discipline, oversee, direct, and supervise the actions of Delta Nu and its fraternity members by ensuring compliance with the law, ensuring that fraternity parties were reasonably safe by providing security and/or preventing alcohol on the premises when appropriate, and ensuring the fraternity members were not otherwise engaging in and/or permitting dangerous conduct to occur at such fraternity parties or events at the fraternity house. A.R.R. alleged that the defendants knew or reasonably should have known of the risks and dangers of sexual assaults occurring at parties hosted by Delta Nu at the fraternity house, knew that assaults were likely to occur under the circumstances, and failed to exercise ordinary care which resulted in harm to A.R.R.

On February 19, 2021, the defendants moved for summary judgment. On March 31, 2021, the circuit court granted those motions. In addressing the negligence-based claims generally, the

3

court noted that the case involved a third-party criminal attack and concluded that, barring some exception, there is generally no legal duty in negligence to protect someone from a third-party criminal attack. The court further noted that the Missouri Supreme Court has taken the position that a national fraternity organization is generally not liable for the conduct of a local chapter, unless it exercises day-to-day control over the local chapter. The court concluded that TKE and House Association had no day-to-day control of the local chapter.

With regard to the premises liability claims in Count II, the court found that the facts of the case do not create a submissible claim of premises liability against the defendants. The court concluded that TKE does not own or control the fraternity house, and while the House Association owns the house, it leases the premises to individual fraternity members living in the house. The court determined that A.R.R. was a social guest and a licensee on the premises at the time of the incident, as there was no evidence that A.R.R. had a business purpose on the premises or that the premises were open to the public. The court further found that, even if the defendants controlled the premises, they had no legal duty of care with respect to serving alcohol to a social guest. Further, in order for a duty to protect from a third-party criminal act to attach to a social host, the social host must be present on the premises, have reason to know of his/her ability to control the third-party, and have reason to know the necessity for exercising control. The court concluded that the facts do not support a submissible case against the defendants on these elements.[3]

_____

[3] The court additionally found that, even if A.R.R. could be considered an invitee, the facts do not evidence a "special relationship" and/or "special facts and circumstances" such as would be necessary to support the defendants having a duty of care to protect A.R.R. from a third-party criminal attack.

4

With regard to the negligent supervision claims in Count III, the court found that the facts of the case do not support a submissible claim, as there was no evidence that the defendants had a legal duty to supervise the tenants/fraternity members under Missouri law.

With regard to A.R.R.'s Count IV negligence claim, the court noted that the First Amended Petition does not clearly identify the basis for the defendants' alleged duty of care in that count. Further, that A.R.R.'s contention (in response to the defendants' summary judgment motions) that the defendants assumed a duty to supervise Delta Nu and/or protect A.R.R. from a criminal attack is not supported by the facts of the case.

This appeal follows.

## Standard of Review

The standard of review for a preserved appeal challenging the grant of a motion for summary judgment is *de novo*. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (superseded by rule on other grounds). In such cases, we do not defer to the trial court's decision, but instead use the same criteria that the trial court should have employed in initially deciding whether to grant the motion. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. 2007) (internal citations omitted). We review the record in the light most favorable to the party against whom judgment was entered, and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Com. Fin. Corp.*, 854 S.W.2d at 376. A genuine issue that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the genuine issue is real, not merely argumentative, imaginary, or frivolous. *Id.* "Facts set forth by affidavit or otherwise in support of

5

a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* The moving party bears the burden "of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support that right to judgment." *Id.*

> A 'defending party' may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58-59 (Mo. banc 2005).

### Point I – Premises Liability

In A.R.R.'s first point on appeal, she contends that the circuit court erred in granting summary judgment to the defendants on Count II of the First Amended Petition, arguing that she presented summary judgment facts supporting a claim for premises liability in that the relationship between TKE and House Association, the Room Lease, and the governing documents of TKE show that the defendants had joint control over the fraternity house and the right to exercise day-to-day control over Delta Nu and its members, and the defendants had a duty to protect A.R.R. from the known dangers of sexual assault and rape.

"Tort law focuses on three basic elements:  duty, breach and damages." *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002).  "Accordingly, in any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *Id.* (internal quotation marks and citation omitted). "Whether a duty exists is purely a question of law." *Lopez v. Three Rivers Elec. Coop, Incl*, 26

S.W.3d 151, 155 (Mo. banc 2000). A.R.R.'s First Amended Petition alleges that TKE and House Association had joint control of the fraternity house as "owners and operators" and owed her a duty of protection "because they possessed and controlled" the fraternity house.

"Missouri Courts have adopted the Restatement (Second) of Torts (1965) with regard to premises liability." *Medley v. Joyce Meyer Ministries*, 460 S.W.3d 490, 495 (Mo. App. 2015). As relevant here, the Restatement (Second) of Torts defines a "possessor" as a party "in occupation of the land with the intent to control it." *Id.* at 496 (quoting Restatement (Second) of Torts section 328E(a)). A non-owner of premises may be a possessor, and ownership is not a requirement for possession of the land in order to establish premises liability. *Medley*, 460 S.W.3d at 496 (quoting *Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 285 (Mo. App. 1995) (overruled on other grounds)). "The term 'possession' is often 'used to denote the legal relations resulting from the facts.'" *Medley*, 460 S.W.3d at 496 (quoting Restatement (Second) of Torts section 328E cmt. a.). "[W]hen the facts surrounding the status of a party-defendant are not in dispute, the determination of whether the defendant is a possessor of land is a question of law." *Id.* Here, the parties dispute the implications of the essential facts, not the essential facts themselves.[4]

A.R.R. contends that both TKE and House Association "possessed and controlled" the fraternity house in that the relationship between TKE and House Association, the Room Lease,

---

[4] While A.R.R. argues in her reply brief that she controverted numerous facts alleged by the defendants and, therefore, summary judgment is inappropriate, A.R.R.'s argument throughout her memorandums in opposition to the defendants' summary judgment motions, and in her opening brief on appeal, is that the summary judgment facts prove the defendants were in control of the Delta Nu members, and in possession of the fraternity house, such that the defendants had a duty to prevent A.R.R.'s alleged assault. The defendants argue that the essential facts and exhibits relied on by A.R.R. prove the opposite. Both parties rely on the same underlying facts (*i.e.*, the facts surrounding the relationship between TKE and the House Association, the Room Lease, and the governing documents of TKE) for their positions. As the question of control/possession and ultimately duty are questions of law, and not issues for the trier of fact, we examine the summary judgment facts and supporting exhibits to resolve these legal questions. "The purpose for filing a motion for summary judgment is to resolve cases when there are no genuine issues of material fact and resolution depends solely on questions of law." *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 334 (Mo. banc 2009).

7

and the governing documents of TKE show that TKE and House Association had joint control over Delta Nu and its members, and the right to control the day-to-day activities of Delta Nu and its members.

Premises Liability as to House Association

It is undisputed that House Association owns the fraternity house. It is also undisputed that each Delta Nu member residing in the fraternity house enters into House Association's "Active Frater Room Lease" (hereinafter "Lease"). The terms of the Lease provide that it is a contract between House Association and the Lessee for a "room assignment." In consideration for being permitted "to reside in the Chapter house," the lessee agrees to do various things, such as pay rent at a certain time and in a certain manner, and be "contractually responsible" for keeping Delta Nu dues and assessments up to date. Room assignments are made by Delta Nu, although House Association reserves the right to assign or reassign rooms. The lessee agrees to abide by all house rules as imposed by Delta Nu, and "maintain his room, all common areas, and the contents assigned to him in good condition." The lessee may not make alternations to the premises (his room or the fraternity house) without the prior approval of House Association. The Lease requires a $300 "damage, common area, key and rent deposit." All cooking of food in any electrical appliance but a microwave is to be performed in the kitchen area of the fraternity house.

The Lease further provides that House Association may terminate the contract for "good cause," which includes "any conduct which disrupts the orderly administration and/or function" of Delta Nu or House Association. House Association reserves the right to enter the lessee's room "for purposes of inspection, verification of occupancy, policy enforcement, safety, health, maintenance, and to reclaim any Delta Nu Housing Association property." The lessee agrees to abide by the contract, the bylaws of the Fraternity, the regulations of Delta Nu, the laws and

8

regulations of TKE, and all applicable local, state and federal laws. The Lease acknowledges that the lessee shares "the premises" in a "group living" environment and requires the lessee to abide by "Terms of Group Living" which are attached to the Lease. House Association has the discretion to terminate the Lease for violations of the Terms of Group Living. The lessee agrees to not use the fraternity house for any immoral or unlawful purpose. The lessee agrees to "practice good housekeeping and keep the Chapter House neat and clean." The Lease provides that the Lessee shall be liable for all damages personally inflicted on the fraternity house and/or fraternity property; damage to common areas of the house will be charged on a pro-rata basis to all residents/members unless the individuals causing the damage can be clearly identified. Charges for "cleaning and damages" are set forth within the Lease, and property located within the common areas ("Board Room and House," "Frater Lounge," "Bathroom," "Misc.") as well as within the bedrooms are itemized. For example, the cost to replace the couch and china cabinet in the "Frater Lounge" are listed at $1,000 each, and the television is listed at $1,500.

Various restrictions are set forth in the Lease with regard to potentially dangerous items which are prohibited from the premises. The Lease requires that if a fire alarm sounds, all house occupants must immediately evacuate the structure. A mandatory disaster drill is to be held at the beginning of each school semester. All residents of the property are "required to maintain the cleanliness and order of both the interior and exterior at all times. Hallways, stairwells, balconies, fire escape, etc. should be kept clear of trash and other items." Interior furniture is not to be moved without approval from House Association, and any physical modifications to the property must be approved. "All individuals on the premises in question agree to behave in a respectable and socially responsible manner." "Overnight guests (i.e. visitors from another college/university) need to be registered and permission granted with the chapter house manager. The resident will

9

be held responsible for their guest's behavior. Any damages incurred by guests or visitors will also be the responsibility of the resident that invited them." The Lease contains a "Liability" section wherein the lessee agrees that House Association, Delta Nu, and TKE are limited in their ability to protect the lessee and guests from crime, accident, and natural disaster, and provides that they will not be liable for damages resulting from such events.

A.R.R. argues that the House Association only leased "space" in the fraternity house and did not lease the entirety of the fraternity house to Delta Nu and its members, thereby retaining control of the property and "possessing" the property for purposes of premises liability. Yet, the Lease reveals that, while individual lessees are given room assignments such that it can be inferred that the individual lessees cannot claim access to and/or possession over another lessee's assigned room, the Lease grants all lessees the right to use common areas of the fraternity house. Individual lessees are required to use the kitchen area of the fraternity house to use any cooking appliance but a microwave. Individual lessees are also required to split the cost of damages to common areas where it cannot be determined who should be held responsible. The fact that the Lease contemplates that damages to common areas may occur under circumstances in which the perpetrator of the damage may be undiscoverable, and that lessees will be solely responsible for that damage, suggests no intent by House Association to supervise and control the premises of the fraternity house on a daily basis.

The Lease represents a contractual landlord tenant relationship. "The general rule, pursuant to Missouri case law, is that a landlord does not owe a duty to his tenant, and is not liable for personal injuries, received by a tenant or by a tenant's invitee, caused by the dangerous conditions of the premises." *Dean v. Gruber*, 978 S.W.2d 501, 503 (Mo. App. 1998). There are three recognized exceptions, however, which include: "(1) when the landlord had knowledge of a

10

dangerous condition, which condition is not discoverable by the tenant, and the landlord fails to make disclosure; (2) when the injury occurs in a common area; and (3) when a landlord is responsible for making repairs, but negligently fails to do so." *Id.* (citing *Newcomb v. St. Louis Office for Mental Retardation & Developmental Disabilities Res.*, 871 S.W.2d 71, 74 (Mo. App. 1994)). These exceptions are inapplicable here. With regard to the first exception, at no time prior to the events alleged in A.R.R.'s First Amended Petition did House Association have any information or knowledge that would have suggested that the fraternity member accused of the assaults had any dangerous proclivities. Nor is there anything in the record that would suggest that House Association was aware of any dangerous proclivities of any other Delta Nu member or lessee of the fraternity house. Although there had been a prior allegation of sexual assault involving a Northwest Missouri State University Delta Nu member in February 2015, that individual no longer attended Northwest Missouri State University, and was no longer a member of Delta Nu.[5] We find A.R.R.'s argument that sexual assault and rape is a "known" danger to be unavailing where, under the facts of this case, House Association and A.R.R. would have had equivalent knowledge in this regard. With regard to the second and third exceptions, the alleged assaults did not occur in a common area of the residence, but rather an assigned room which had

---

[5] Five months prior to the alleged incident against A.R.R., Northwest Missouri State University completed an investigation into the alleged assault which took place in February of 2015 and involved a member of Delta Nu. The investigation concluded that "it did not reveal a culture of accepting or promoting sexual misconduct," but did conclude that "there are issues regarding alcohol use and parties at the Tau Kappa Epsilon house." Delta Nu was placed on probation by the university for the Fall 2015 semester and, although it was "still allowed to have alcoholic and non-alcoholic social events," it was required to adhere to certain policies and guidelines and complete certain tasks before the probationary period would be lifted. A.R.R.'s First Amended Petition does not allege that the defendants or the Delta Nu fraternity members were responsible for her intoxicated state. The uncontroverted material facts show that A.R.R. consumed four red solo cups of an alcoholic concoction called "jungle juice" at the first fraternity house she visited that night, and then a "Straw-Ber-Rita" at a second fraternity house before proceeding to the Delta Nu fraternity house. A.R.R. testified that at that point she "legally couldn't drive" and was potentially impaired to the point that she was unable to consent to sexual activity.

11

been leased by a Delta Nu member, and there is no allegation that House Association was responsible for and negligent in making repairs.

This premises liability claim is conceptually different from cases wherein a duty is created because a landlord retains general supervision over premises for the purpose of making repairs or alternations and has the right to enter the premises and make repairs on his/her own initiative. *See Lemm v. Gould*, 425 S.W.2d 190, 195 (Mo. 1968). The issue alleged here is that House Association had a duty to monitor the premises and control the behavior of its lessee so as to prevent the alleged assault against A.R.R. The question as to possession and control, therefore, becomes whether House Association retained general supervision over the premises for the purposes A.R.R. alleges House Association had a duty engage in so as to protect her from harm, *i.e.*, monitoring the alcohol consumption of lessees and guests, monitoring the sexual activity of lessees and guests, assessing a lessee's and/or guest's level of intoxication and capacity to consent to sexual activity, and intervening where a lessee's or guest's behaviors could result in harm. We find nothing within the Lease that shows Housing Association retained supervision of the property for these purposes. Further, while House Association reserves the right to enter a lessee's room for purposes of inspection, verification of occupancy, policy enforcement, safety, health, maintenance, and to reclaim any Housing Association property, the Lease provides that such may only occur "at times convenient to its members." Hence, where the fraternity members dictate when House Association may enter a lessee's room, the Lease expressly removes from House Association's control the ability to prevent a sexual assault from occurring within a lessee's room.

The Lease terms set forth various requirements that a lessee must meet in order to live and continue to live in the fraternity house. The lease is reactive in the sense that, while certain expectations are outlined, House Association is only entitled to act and/or terminate the Lease once

12

a breach has occurred. Nothing within the Lease contemplates that House Association will actively monitor the premises to prevent a breach.

A.R.R. argues that this was not a typical landlord tenant relationship and, therefore, the rules regarding such do not apply.[6] Yet, even if viewed under general premises liability standards, the result is the same. "When a plaintiff sues a possessor of land for injuries arising out of an unreasonably dangerous condition on that land, the standard of care owed by the defendant is defined by the relationship existing between the possessor of the land and the plaintiffs." *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). "The standard of care owed an invitee is generally higher than that owed a licensee." *Id.* "As to premises liability, the particular standard of care that society recognizes as applicable under a given set of facts is a question of law for the courts." *Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. banc 1995).

Whether a visitor is an invitee or a licensee is a question of law. *Id.* "The possessor's intention in offering the invitation determines the status of the visitor and establishes the duty of care the possessor owes the visitor." *Id.* "A social guest is a person who has received a social invitation." *Id.* In Missouri, a social guest is a licensee. *Id.* "The fact that an invitation underlies a visit does not render the visitor an invitee for purposes of premises liability law." *Id.* To render the visitor an invitee, the invitation must have been tendered with the motive of a material benefit, or extended to the public generally or to some undefined portion of the public. *Id.*

---

[6] A.R.R. contends that the House Association Lease requires that lessees must pay TKE dues and comply with TKE laws, rules, and regulations, arguing that this evidences TKE's control over House Association and that they both exercise joint control of the premises. It is uncontroverted, however, that only TKE fraternity members may lease rooms within the fraternity house. Without requirements within the Lease regarding compliance with TKE rules/regulations/dues, etc., someone expelled from TKE for matters unrelated to the Lease could continue to live within the fraternity house.

Here, the defendants contend that, as a social guest, A.R.R. was a licensee at the fraternity house the day of the alleged assault. A.R.R. contends that she was an invitee, and not a licensee, because the "business" of TKE is recruiting new male members, with TKE's mission being to aid these men in their social development.[7] A.R.R. contends that the "business" of the House Association is to lease rooms to some members of the local chapter of TKE, and it can be inferred, therefore, that social gatherings are important to its members as these gatherings help recruit future members of TKE and future tenants of the House Association.

The undisputed material facts show that A.R.R. was a female social guest[8] at a Halloween party hosted by members of Delta Nu, and that at this particular party Delta Nu did not allow men who were not already members of Delta Nu into the party. (A.R.R.'s Statement of Uncontroverted Material Fact #97 and #98). As Delta Nu is a male fraternity, this party, therefore, could not have been designed to recruit future members of Delta Nu, or future tenants of House Association.[9] The undisputed material facts, therefore, show that A.R.R. was a licensee at the Delta Nu Halloween party.

Similar to the first exception in landlord tenant premises liability, the possessor of land owes a licensee the duty to make safe the dangers of which the possessor is aware. *Carter*, 896 S.W.2d at 928. Missouri has adopted the duty of care set forth in Restatement (Second) of Torts §

[7] A.R.R. also contends that, regardless of her status, she was owed a duty of protection by the defendants against the known dangers of sexual assault and rape because the defendants possessed and controlled the fraternity house.

[8] Eighteen times in A.R.R.'s brief she uses the terminology "social guests such as A.R.R." or something equivalent.

[9] TKE expressly prohibits female "auxiliary organizations or Little Sister groups composed of collegiate women and affiliated with a collegiate chapter." (TKE "International Bylaws and Traditions" Chapter XXII, SEC. 2., Eleventh).

14

342 (Am. Law. Inst. 1934). *Wells v. Goforth*, 443 S.W.2d 155, 158 (Mo. banc 1969), *overruled on other grounds by Rowe v. Farmers Ins. Co.*, 699 S.W.2d 423 (Mo. banc 1985). This section states:

> A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he
>
>     (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and
>
>     (b) invites or permits them to enter or remain upon the land, without exercising reasonable care
>
>         (i) to make the condition reasonably safe, or
>
>         (ii) to warn them of the condition and the risk involved therein

Restatement (Second) of Torts § 342 (Am. Law. Inst. 1934). As discussed above, the uncontroverted material facts show that House Association had no knowledge of any dangerous tendencies on the part of the alleged assailant so as to create a duty to warn and/or take any other action to protect A.R.R.

Moreover, whether viewing the facts under landlord tenant premises liability or general possessor liability, House Association was entitled to summary judgment. House Association did not owe a duty to A.R.R. because House Association was not in occupation of the fraternity house with the intent to control the behavior of the occupants within, and had no knowledge that the alleged assailant had violent or criminal tendencies.[10]

---

[10] "The touchstone for the creation of a duty is foreseeability." *Weiland v. Owner-Operator Services, Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018). "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Id.* A.R.R. does not challenge or even discuss in her opening brief the circuit court's conclusion that the alleged assault involved a third-party criminal act. In A.R.R.'s memorandums in opposition to the defendants' motions for summary judgment, A.R.R. argued that one of the exceptions to the general no duty rule in third-party criminal act cases applied. (In A.R.R.'s reply brief, she argues that this was not a third-party criminal act at all.)

Premises Liability as to TKE

It is undisputed that TKE is an Indiana Corporation with its principal place of business in Indiana, and that it is an international fraternity that collects certain fees from members. A.R.R. contends that TKE shares joint control of the Northwest Missouri State University Delta Nu fraternity house with House Association because TKE required the establishment of the House Association for the purpose of owning the fraternity house, and TKE determined how House Association was governed. A.R.R. argues that these facts, along with the facts that it believes establishes that House Association possessed the fraternity house for purposes of premises liability, establishes that TKE and the House Association exercised joint control over the property.

We have already concluded that House Association was neither in possession of the fraternity house for purposes of A.R.R.'s claims, nor had an intent to exercise control over the fraternity house at the time A.R.R. was allegedly assaulted. Hence, no derivative duty can be inferred from any relationship TKE has with House Association. Further, the material facts show that TKE was not in occupation of the fraternity house with the intent to control it so as to be considered in possession itself.

We disagree with A.R.R. that the governing documents of TKE show that TKE controlled the fraternity house. TKE's Articles of Incorporation state that it has the power to advise and

---

On appeal, A.R.R. discusses various policy factors that courts consider when generally determining whether a duty of care exists in negligence cases and applies these factors to her premises liability claim. *See Bowan ex rel. Bowan v. Express Medical Transporters, Inc.*, 135 S.W.3d 452, 457 (Mo. App. 2004). A.R.R. misunderstands, however, that these policy factors have already been considered by the courts and/or the legislature when adopting rules for specific types of negligence actions. "A duty to exercise care not only may be imposed by a controlling statute or ordinance or assumed by entering into a contractual relationship, but it may be imposed by common law under the circumstances of a given case." *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976). Thus, we are not at liberty to start afresh in a landlord tenant/premises liability case where the elements which create a duty of care in such cases have already been established.

instruct the members and chapters of the Corporation with respect to the principles, rituals and traditions of the Corporation, and to expel those members and declare non-operating or dormant those chapters that fail to conform. Chapters, chapter corporations, and members of the Corporation have no right or authority to act on behalf of the Corporation in any manner, except for the limited purpose of collecting dues of the Corporation. The Corporation's power to supervise members and chapters are limited to protecting "the Corporation's name and ritual." The Corporation's "sole right in the event that a member or chapter fails to conform to the principles, rituals and traditions of the Corporation shall be to expel the offending member or to declare non-operating or dormant the offending chapter."

Local chapters are given the power to make local rules, regulations and bylaws for their own government, as long as not inconsistent with TKE's Constitution, etc. The assets of each collegiate chapter are held by a not-for-profit corporation ("Chapter Corporation") organized and managed by the chapter's Board of Advisors. The Board of Advisors is also the Board of Directors of the Chapter Corporation. The activities of each collegiate chapter are supervised by the chapter Board of Advisors. A chapter may appeal to the TKE Chief Executive Officer from any decision or action by the Board of Advisors, with further right of appeal from the Chief Executive Officer's decision to the Grand Prytanis. The title to all real and personal property of a chapter vests in the Chapter Corporation for the specific chapter. (In this case, House Association is the Chapter Corporation holding title to the fraternity house.) In the event that a chapter is suspended or declared non-operating, the Grand Council of TKE has authority over the real estate and personal property "held by the Chapter Corporation, Board of Advisors and chapters to prevent its being diverted from its proper use as Fraternity property" and prevent the carrying on of practices contrary to TKE's Constitution, bylaws, laws, ritual or principles. If the charter of any chapter is

17

withdrawn or surrendered, the title to any real estate is held for the alumni members of the chapter for two years, after which if the chapter has not been restored, the chapter Board of Advisers and Chapter Corporation shall sell the real estate (unless other action is authorized) and hold the final proceeds to the credit of the local chapter. The individual chapter selects its own members and has discretion to refuse membership to someone of "bad reputation, immoral habits, addicted to the use of intoxicants, or who has violated any state, provincial or federal criminal law."

We find nothing in the summary judgment facts and supporting documents that show TKE had a duty to monitor the fraternity house and control the behavior of its members so as to prevent the alleged assault against A.R.R. TKE did not occupy, control, or have the intent to control the fraternity house premises at the time of A.R.R.'s alleged assault.

We conclude that the circuit court did not err in granting summary judgment in favor of the defendants on Count II of the First Amended Petition. The summary judgment facts do not support a claim for premises liability in that neither House Association nor the national fraternity organization, TKE, occupied the fraternity house or had the intent to control the fraternity house such that a duty to protect A.R.R. from the alleged criminal acts on those premises arose.

A.R.R.'s first point on appeal is denied.

**Point II – Negligent Supervision**

In her second point on appeal, A.R.R. contends that the circuit court erred in granting summary judgment in favor of the defendants on Count III, arguing that she presented summary judgment facts supporting a claim for negligent supervision because the facts show that the defendants had a duty to supervise Delta Nu and its members to protect A.R.R. from the known dangers of sexual assault and rape. A.R.R. argues that the relationship between TKE and House Association, the Room Lease, and the governing documents of TKE show that TKE and House

18

Association had joint control over the fraternity house and the right to exercise day-to-day control over Delta Nu and its members. Further, that the close relationship between TKE, the House Association, Delta Nu, and its members show that TKE and House Association had a duty to supervise Delta Nu and its members to protect A.R.R. from the known dangers of sexual assault and rape.

"Negligent supervision, like any other tort, involves a breach of a duty defendant owes plaintiff which causes plaintiff to suffer damages." *Hill ex rel. Hill v. Herbert Hoover Boys Club*, 990 S.W.2d 19, 22 (Mo. App. 1999) (internal quotation marks and citation omitted). "The duty to supervise is a narrow one, requiring the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Id.* Such a duty has only been recognized in Missouri in child/caretaker relationships and master/servant situations. *See e.g.*, *Intermed Ins. Co. v. Hill*, 367 S.W.3d 84, 89 (Mo. App. 2012).

A.R.R. concedes that "the relationship between TKE and House Association on one side and Delta Nu and its members on the other do not fit within the categories Missouri has previously recognized as involving a duty to supervise." A.R.R. argues, nonetheless, that "the relationships involved, the policy considerations impacted, the possession and control over The House, the right to exercise day-to-day control all support imposition of a duty to supervise in the present case." Yet, we determined in A.R.R.'s first point on appeal that the defendants did not possess the premises on which A.R.R.'s assault allegedly took place. Further, Missouri does not recognize a claim of negligent supervision against parents of *adult* children, even where the child continues to reside with the parents. *See Hallquist v. Smith*, 189 S.W.3d 173, 178 (Mo. App. 2006) (*Hallquist* refused to create a "new cause of action for negligent supervision" in a case that involved an adult child who resided in his parents' home and used the parents' vehicle, and whom the parents knew

19

had a history of driving after using alcohol and/or marijuana. The child, while under the influence of drugs and/or alcohol, left the parents' home late at night in the parents' vehicle, and hit a parked police car injuring a police officer.) In *Lockhart v. Carlyle*, 585 S.W.3d 310, 316 n.10 (Mo. App. 2019), we noted the dearth of cases holding that the relationship between a parent and an adult child is sufficient to establish any duty on the parent to protect third parties against the adult child's actions and stated, "We decline to find that such a duty exists." Hence, where negligent supervision has not been extended to adult child/parent relationships, we can find no basis in Missouri law to impose a duty on landlords to supervise the behaviors and social activities of adult tenants, or require a national fraternity organization to do the same.

The circuit court did not err in granting summary judgment in favor of the defendants on Count III. The summary judgment facts do not support a claim for negligent supervision as Missouri does not impose a general duty on landlords or national fraternities to supervise the social activities of tenants/fraternity members to protect social guests from potential crimes.

A.R.R.'s second point on appeal is denied.

### Point III – Negligence

In A.R.R.'s third point on appeal, she contends that the circuit court erred in granting summary judgment in favor of TKE and House Association on Count IV of her First Amended Petition, arguing that she presented summary judgment facts supporting a claim for negligence against the defendants because the relationship between TKE and the House Association, the Room Lease, and the governing documents of TKE show that TKE and House Association had joint control over the fraternity house and the right to exercise day-to-day control over Delta Nu and its members. A.R.R. argues that the close relationship between TKE, House Association, Delta

20

Nu, and its members show that TKE and House Association had a duty to protect social guests such as A.R.R. from the foreseeable criminal acts of members of Delta Nu and TKE.

In Count IV in A.R.R.'s petition labeled "Negligence," A.R.R. alleged that TKE had a duty to "control, discipline, oversee, direct, and supervise the actions of Delta Nu and its fraternity members" and that Housing Association "had a duty to control, oversee, direct, and supervise the activities on its property, including the actions of" the alleged assailant. These claims, therefore, were essentially negligent supervision and premises liability claims, both of which have been discussed above. Missouri does not recognize a claim of negligent supervision under the summary judgment facts presented, and the summary judgment facts do not support a claim for premises liability in that neither House Association nor TKE occupied the fraternity house or had the intent to control the fraternity house such that a duty to protect A.R.R. from the alleged criminal acts on those premises arose.

A.R.R.'s third point on appeal is denied.

**Point IV – Negligence**

In A.R.R.'s fourth point on appeal, she alleges generally, without pointing to any underlying Count in her First Amended Petition, that the circuit court erred in granting summary judgment in favor of the defendants, arguing that she presented summary judgment facts supporting a claim for negligence in that the relationship between TKE and House Association, the Room Lease, the governing documents of TKE, and TKE's "actions following the earlier rape" show that the defendants had joint control over the fraternity house and the right to exercise day-to-day control over Delta Nu and its members. Further, that the close relationship between TKE, House Association, Delta Nu, and its members show that the defendants assumed a duty to protect social guests such as A.R.R. from the known dangers of sexual assault and rape.

"In order to assert a claim of general negligence, a party has to plead facts showing the existence of a duty on the part of the defendant." *Lockhart*, 585 S.W.3d at 316 n.10. "A legal duty arises where: (1) imposed by the legislative branch; (2) imposed by the law based on a relationship between the parties or because the defendant must exercise due care to avoid a foreseeable injury because of a particular set of circumstances; or (3) a party assumed a duty." *Id.* (internal quotation marks and citation omitted). Assumption of a duty is separate from a pre-established legal theory which recognizes a duty, such as premises liability and negligent supervision, because a duty that otherwise does not exist is assumed by contract or by conduct. *K.L.S. v. Union Pacific Railroad*, 575 S.W.3d 259, 268 (Mo. App. 2019). "If a defendant assumes a duty, by contract or by conduct, he can be held liable for injuries caused by the unsafe performance of that assumed duty." *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 919-920 (Mo. App. 2004) (internal quotation marks and citation omitted). "However, a defendant's liability is no broader than the duty assumed." *Id.*

A.R.R.'s First Amended Petition under Count IV, labeled "Negligence," alleges that the defendants "had the right to control, oversee, discipline, supervise, and direct the activities" of its members and/or "on its property" with regard to fraternity related activities, including fraternity parties. The petition further alleges that the defendants "had a duty" to "control, oversee, direct, and supervise the actions" of its members/tenants. The petition does not allege that the defendants *assumed* a duty *to protect A.R.R.* via contract or conduct, as argued on appeal, nor does the petition detail any facts suggesting a contract in place wherein A.R.R.'s protection was guaranteed, or conduct on the part of the defendants evidencing the same.

A.R.R. argued for the first time that the defendants "assumed a duty" in response to the defendants' motions for summary judgment, but even then, the focus was on the alleged "assumed" duties to supervise Delta Nu members and maintain the fraternity house premises in a reasonably

22

safe condition, all allegations related to A.R.R.'s Counts alleging negligent supervision and premises liability. With regard to TKE, A.R.R.'s Memorandum in Opposition to TKE's Motion for Summary Judgment argued: "This power to control and supervise, that TKE has made a conscious effort to retain over Delta Nu and its members, rises to the level of an assumed duty."; "The facts at hand make it clear that TKE assumed the duty to supervise Delta Nu and its members."; "[A]fter TKE learned of a rape that occurred in February of 2015 involving Delta Nu, TKE took on even more responsibility. Specifically, in response to results of an investigation that concluded that there were issues regarding alcohol use and parties at the Fraternity House, and Delta Nu's subsequent probation, TKE assumed additional duties to supervise Delta Nu and its members."; "By securing insurance for The Fraternity House, TKE assumed the duty to maintain its premises in a reasonably safe condition." With regard to House Association, A.R.R.'s Memorandum in Opposition to House Association's Motion for Summary Judgment similarly argued: "It is clear from the facts at hand that The House Association assumed the duty to supervise its lessees and the members of Delta Nu."; The House Association owns and operates The Fraternity House. Not only have they assumed the duty, but they have admitted responsibility for maintaining its premises in a safe condition….Further, the House Association has assumed the duty to control its lessees."; "This power to control and supervise, that The House Association has made a conscious effort to retain over the Delta Nu and its members, rises to the level of a duty that has been assumed."; "To establish an assumed duty to protect invitees against actions of third parties, there must be a showing that there was an express assurance of safety to the invitee and the invitee relied on those assurances….The House Association admits that it is responsible for maintaining its premises in a safe condition."

23

Moreover, upon reviewing the record we find that the claims that A.R.R. makes on appeal regarding the defendants' alleged assumption of a duty to protect her were not expressly made in her First Amended Petition, and to the extent that they were made through the allegations and arguments that the defendants assumed a duty to supervise the members of Delta Nu and maintain the premises in a safe condition, those claims are encompassed in A.R.R.'s allegations of negligent supervision and premises liability which are discussed above.

A.R.R.'s fourth point on appeal is denied.

**Conclusion**

The circuit court did not err in granting summary judgment to the defendants on Counts II, III, and IV of A.R.R.'s "First Amended Petition for Damages" in that, 1) summary judgment on Count II was appropriate because the summary judgment facts do not support a claim for premises liability, 2) summary judgment on Count III was appropriate because the summary judgment facts do not support a claim for negligent supervision, 3) summary judgment on Count IV was appropriate because the summary judgment facts do not support a claim for negligence, and 4) summary judgment on Count IV was appropriate because A.R.R. did not plead a claim for negligence based on an assumed duty, the summary judgment facts do not support a claim for negligence based on an assumed duty, and to the extent that any alleged duty relates to premises liability and negligent supervision, the summary judgment facts do not support a claim for either of those theories of liability.

The circuit court's judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

24